IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02009-KLM

R.J.P.A.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY ,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[2] on review of the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

    The Court has reviewed Plaintiff's Opening Brief [#11]; Defendant's Response Brief [#15] ("Response"), the Social Security Administrative Record [#9] ("AR"), and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED** for further fact finding.

### I. Factual Background

    Plaintiff filed for Disability Insurance Benefits on November 6, 2017. AR 15.

---

[1] Plaintiff is identified by initials only pursuant to D.C.COLO.LAPR 5.2(b).

[2] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. See [#10].

Plaintiff's claim was denied initially and upon reconsideration, and a hearing was then held before Administrative Law Judge ("ALJ") Kathleen Laub on September 3, 2020. *Id*. The ALJ denied Plaintiff's claim on December 1, 2020 (*id.* at 15-31), finding that Plaintiff had not been under a disability, as defined in the Social Security Act ("the Act"), from October 19, 2016 (the alleged onset date) through the date of the decision. *Id*. at 31.

The ALJ followed the five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a). The ALJ found at step one that Plaintiff met the insured status requirements of the Act through December 31, 2022, and had not engaged in substantial gainful activity since the alleged onset date of October 19, 2016. AR 17-18. At step two, the ALJ found that Plaintiff has the following severe impairments: "multiple sclerosis, endometriosis status-post excision, mild neurocognitive disorder secondary to multiple sclerosis, attention deficit hyperactivity disorder, a depressive/bipolar disorder, an anxiety disorder, a personality disorder, and autism spectrum disorder." *Id.* at 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id*. 18-22.

The ALJ then turned to Plaintiff's residual functional capacity ("RFC"), finding that she has the RFC to perform sedentary work with additional limitations. AR 22. Thus, the ALJ stated that:

> The claimant occasionally requires a cane for ambulation. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to vibration and no exposure to extreme heat, extreme cold or hazards such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor). The claimant can frequently handle and finger with the right dominant upper extremity. The claimant can frequently operate foot controls with the right lower extremity. The claimant can perform work that needs little or no judgment to do, simple duties that

> can be learned on the job in a short period of time of up to 30 days and has a reasoning level of no higher than 2. The claimant can sustain ordinary routines, understand, carry out and remember simple instructions, and use judgment in making simple work related decisions. The claimant can attend and concentrate for two-hour periods totaling a normal eight-hour workday with usual work breaks. The claimant can respond appropriately to supervision, co-workers and usual work situations. The claimant can tolerate occasional interaction with the general public, in person or by telephone. The claimant can adapt to occasional changes in a routine work setting. The claimant can perform low stress work, which is defined as work requiring at most occasional decisions and occasional changes in work duties and tasks. The claimant can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time deadline.

*Id.*

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. AR 29. Considering Plaintiff's age (32 years old at the time of the decision), education (at least high school), work experience, and RFC, the ALJ found at step five that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. *Id*. at 30. These jobs included representative occupations such as Address Clerk (DOT 209.587-010) with 7,800 jobs available nationally; Escort Vehicle Driver (DOT 919.663-022) with 9,800 jobs available nationally; and Hand Painter-Stainer (DOT 735.687-018) with 5,300 jobs available nationally, reflecting a 15% erosion. *Id.* at 31.

The Appeals Council denied Plaintiff's request for review (AR 1-5), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See Response* [#15] at 2. This appeal followed.

## II.  Standard of Review

Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994).

## III. Analysis

Plaintiff argues that the ALJ erred in failing to properly evaluate the medical opinion evidence consistent with Agency authority and Tenth Circuit precedent. *Opening Br.* [#11] at 1, 3-17. Additionally, Plaintiff argues that the ALJ's step five denial is not supported by substantial evidence because the ALJ did not properly evaluate whether a significant number of jobs exist that Plaintiff can perform despite her impairments. *Id.* at 1, 17-19. The Court addresses each issue in turn.

**A.     Whether the ALJ Erred in Evaluating the Medical Opinion Evidence**

Plaintiff argues that it cannot be reasonably disputed that the opinions of the following medical providers met Plaintiff's burden of proof to produce evidence demonstrating that she is "disabled" under the Agency's definition of that term: (1) Christopher Domen, PhD ("Domen"), who conducted a neuropsychological evaluation; (2) Kristine Couch, OTR ("OTR Couch"), who conducted a functional abilities assessment; (3) Shannon Cornell, Plaintiff's treating nurse practitioner ("NP Cornell"); (4) Robert Gross, M.D. ("Dr. Gross), Plaintiff's treating neurologist/MS specialist; and (54) Martha Ives, M.D. ("Dr. Ives"), Plaintiff's primary care physician. The opinions of these providers describe far greater limitations than the ALJ found, and Plaintiff contends that the ALJ did not properly evaluate them. *Opening Brief* [#11] at 6.

**1.     The Legal Standard for Evaluation of Medical Opinions**

This case is governed by the revised regulations for evaluating opinions that the agency promulgated on March 27, 2017, for claims filed after that date. *See Response*

[#15] at 6. The revised regulations shift the nature and scope of which evidence is categorized as a medical opinion and significantly alter agency policies on the consideration of opinion evidence. For example, the regulations no longer use the term "treating source[,]" but use the phrase "your medical source(s)" to refer to the medical sources a claimant chooses to use. *See* 20 C.F.R. § 416.920c (2017). Thus, the "treating source rule," which was based on "the presumption that a claimant's sole treating physician generally has . . . longitudinal knowledge and a unique perspective[,]" 81 Fed. Reg. at 62,573, no longer applies. As explained in a recent case from this Court:

> The Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

*Harris v. Saul*, No. 19-v-03715-NRN, 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021). The ALJ is thus required to state how persuasive he or she finds the medical opinions and the prior administrative medical findings. 20 C.F.R. § 1520c(b).[3]

Supportability and consistency are the two most important factors for the ALJ to consider. *Harris*, 2021 WL 406080, at *2 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). As to supportability, the regulations state that "[t]he more relevant the

---

[3] "Prior administrative findings" refer to findings made by State agency medical and psychological consultants about medical issues – other than the ultimate determination of whether a claimant is disabled – at a prior level of review, based on their review of the evidence. 20 C.F.R. § 404.1513(a)(5).

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).  As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  The ALJ is required to explain how he or she considered the supportability and consistency factors for a medical source's medical opinions, and may, but is not required to, explain how he or she considered the other three factors.  If, however, the ALJ finds that two or more opinions about the same issue are equally well-supported, the ALJ must then articulate how he or she considered the other three factors.  20 C.F.R. § 404.1520c(b)(2)-(3).  Thus, as Plaintiff notes, the regulations assume that more than one opinion, even if not the same, can be found to meet the threshold requirement of being persuasive.  *Id.*  Further, the new analysis does not eliminate the requirement that an ALJ explain his or her decision in a way that permits meaningful judicial review.  *See* 82 Fed. Reg. 5844-01, 5871, 2017 WL 168819 (Jan. 18, 2017).

### 2. The ALJ's Evaluation of the Medical Opinions

The Court first notes that in evaluating Plaintiff's RFC the ALJ evaluated Plaintiff's alleged symptoms and activities of daily living, and discussed evidence from the medical records and opinions.  AR at 23-26.  The ALJ found from this discussion of the evidence that Plaintiff's allegations concerning her physical and mental impairments "are not consistent with the record" and that any and all "limiting effects are accounted for by the"

RFC. *Id.* at 25-26. The ALJ also considered several medical opinions. *Id*. 26-29. Some opinions (by the state agency physicians and a consultative examiner) suggested that Plaintiff was more capable than the ALJ found, while others (generally the treating and examining sources) indicated that she was less capable, including the ones relied on by Plaintiff. *Id*.

As to the medical opinions, while the ALJ stated that she found the Domen opinion (Exhibit 12F) persuasive as to certain of Plaintiff's mental impairments (*id.* at 30), she did not adopt certain alleged limitations that Plaintiff alleges Domen opined to. *See Opening Brief* [#11] at 16. As to the other medical opinions, the ALJ found that the state agency physicians' opinions regarding Plaintiff's physical and mental impairments were not entirely persuasive, as additional limitations were warranted based on the evidence. *Id.* at 26-27. The opinions of NP Cornell (Exhibits 17F and 18F) were found, in contradiction, to be both "somewhat persuasive, but not to the extent set forth in" the assessment and "not persuasive." *Id.* at 29. The remaining medical opinions discussed by the ALJ were found to be not persuasive, including opinions from Gil Melburn-Westfall, Psy.D (Exhibit 21F), Ryan Parsons, M.D. (Exhibit 22F), Dr. Gross (Exhibit 26F), Dr. Ives (Exhibit 38F), OTR Couch (Exhibit 15F), and Caitlyn Chappell, FNP-C (Exhibit 37F). *Id.* at 27-30. The issue before the Court is whether the ALJ properly considered the medical opinions, and specifically, the opinions that Plaintiff argues were not properly evaluated.

### a.  Opinion of OTR Couch

The Court first addresses the functional abilities assessment as to Plaintiff's physical capacities conducted by OTR Couch (AR 1192-1231) and her corresponding opinion (*id*. 1232-38), which Plaintiff relies on heavily in support of her argument that the ALJ did not

properly evaluate the opinion evidence. *See, e.g., Opening Brief* [#11] at 5-7, 11-14. OTR Couch found, among other things, that Plaintiff can occasionally lift/carry 5 pounds; sit for 3 hours, stand for 1 hour and walk for 1 hour total in an 8-hour workday; rarely perform manipulative tasks; and never perform postural activities. *Id.* at 5; AR 1234-36. According to OTR Couch's opinion, these limitations were supported by the functional capacity evaluation, the sit-stand report, and by Plaintiff's symptoms of visual blurring, decreased balance, dizziness, fatigue, numbness, and tremor of the right hand. *Id.* Plaintiff highlights that the limitations found by OTR Couch are far greater than the limitations the ALJ found as, for example, OTR Couch found that Plaintiff cannot sit, stand and walk, in combination, for the duration of an 8-hour workday, demonstrating that she cannot meet the requirement for full-time work rule. *Id.* at 6; SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (stating that RFC assesses "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" meaning "8 hours a day, for 5 days a week. . .").

The ALJ found that the opinion of OTR Couch "was not persuasive, as it is not supported by and is not consistent with the evidence." AR 29. As further grounds for finding the opinion not persuasive, the ALJ stated, "[t]his provider is not an acceptable medical source[,]" and "[i]n addition, this provider cited to the evidence generally without taking into account the extent of the claimant's limitations in formulating her opinion." *Id*. Moreover, the ALJ found that "the record shows less limitation than opined[,]" stating:

> The claimant had normal strength and good gait. She could care for a dog, lift and carry her infant, care for children, and cook. She could even drive and go out alone (hearing testimony; 14F/24; 16F/4, 54; 19F; 22F/3; 24F/15; 35F/17, 31). All of this supports a lesser level of limitation, and this opinion is not persuasive.

*Id.* at 29-30.

Plaintiff argues that the ALJ erred in her analysis, essentially asserting that the reasons given by the ALJ for her finding that the opinion is not persuasive are not supported by substantial evidence and fall short of what is required in the regulations. The Court agrees.

First, while the ALJ stated that OTR Couch is not an acceptable medical source, she failed to recognize this is no longer a basis to discount a medical opinion. Thus, SSR 06-3p, which defined such sources and addressed how evidence from such a source was to be addressed, was rescinded for claims filed on or after March 27, 2017. *See* SSR 96-2p, 2017 WL 398298, at *1 (March 27, 2017). The final rules applicable to such claims "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." *Id.* at *2. Accordingly, to the extent that the ALJ relied on the fact that OTR Couch was not an acceptable medical source in making her persuasiveness determination, this was error.

Second, the ALJ broadly stated that OTR Couch's opinion was not supported by the evidence, but cited as to this issue only the fact that Plaintiff had normal strength and good gait and could perform certain activities of daily living. AR 29. While not specific to OTR Couch, the only other evidence the ALJ cited to support the RFC as to Plaintiff's physical impairments was that she "often presented with normal gait and no difficulties in walking[,]" Plaintiff's use of a cane was only occasional, "[p]hysical exams . . . showed normal muscle strength, tone, and sensation, normal coordination, and normal dexterity[,]" and Plaintiff "was recommended for or participated in increased activity, exercise, or physical therapy, which shows at least some residual function." *Id.* at 25-28. The ALJ also stated that no

greater limitations as to Plaintiff's physical impairments than those set forth in the RFC were warranted "as the claimant has demonstrated the ability to engage in significant physical activities." *Id*.; *see also* 26 (discussing Plaintiff's activities of daily living).

In finding that OTR Couch's opinion and assessment was not consistent with this evidence, the ALJ overlooked probative evidence to the contrary and appeared to improperly pick and choose among medical records in discussing the evidence. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (holding that an ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

For example, Plaintiff highlights evidence in the record documenting imbalance; vertigo; right sided weakness and paresthesias; numbness in Plaintiff's legs; spasms; spasticity; fatigue; slow, hesitant, narrow based gait; unsteadiness with heel and toe-walking, left lower extremity weakness; heaviness in legs; and "worsening bilateral feet paresthesias." *Opening Brief* [#11] at 8-12 (citing AR 780, 800, 803, 805, 876, 932, 972, 974-75, 1067-68, 1115, 1249, 1566.)  This evidence should have been considered in connection with the consistency and supportability factors, as it is objective medical evidence that lends support to and is consistent with OTR Couch's opinions.

Moreover, the ALJ does not account for how the evidence she relied on, such as normal gait, muscle strength, tone, and sensation, or Plaintiff's activities of daily living, contradict OTR Couch's specific findings based on testing regarding Plaintiff's physical limitations.  For example, according to the evaluation, Plaintiff demonstrated maximum sustained tolerances as follows: sitting for 2 hours and 1 minute before changing position

due to stiffness and fatigue; standing for 1 hour and 21 minutes before changing position due to fatigue and decreased balance; walking 200 feet; a combined sitting tolerance of 3 hours and 46 minutes; and a combined standing tolerance of 1 hour and 52 minutes. AR 1193. Plaintiff's gait while walking was antalgic, favoring the right leg; Plaintiff touched the wall while walking due to decreased balance and dizziness; and she sat down after this test due to right leg weakness. *Id*. at 1193-94. Plaintiff was able to occasionally lift/carry 5 pounds; her capacity was limited due to decreased balance, altered vision, and dizziness. *Id*. 1193-94. Her gait was antalgic while carrying weight, *id*. 1194, and the evaluation had to be conducted over two days due to Plaintiff's significant fatigue. *Id*. 1193.[4] In light of these specific findings which addressed Plaintiff's physical impairments, the ALJ's statement that OTR Couch "cited to the evidence generally without taking into account the extent of the claimant's limitations in formulating her opinion" is simply not supported, and it is unclear what information or conclusion the ALJ is trying to convey through this statement. In fact, the results of the evaluation support and are consistent with OTR Couch's opinions regarding the significance of Plaintiff's physical impairments.

The ALJ also improperly discounted the significant limitations OTR Couch found as to manipulative tasks without explanation or citation to any evidence.[5] The evaluation

---

[4] Consistent with the record as a whole, the evaluation is replete with references to Plaintiff's fatigue, supporting OTR Couch's opinion and demonstrating that Plaintiff may not be able to sustain full-time employment. *See, e.g.*, AR 659, 667, 730, 747, 751, 780, 803, 1193-94 (noting observed fatigue symptoms as well as significant fatigue reported by Plaintiff). An ALJ must properly consider the impact of fatigue. *Clark v. Barnhart*, 64 F. App'x 688, 691-692 (10th Cir. 2003)

[5] While the ALJ's general discussion of the evidence included a statement that Plaintiff "was often observed to have no tremors, she could perform the finger-to-nose test, and she had normal hand coordination and use[,]" AR 24, the evidence the ALJ cited addressed such things as normal finger to nose tests and normal strength in Plaintiff's finger abductors, extensors, and flexors. The

included tests relevant to that issue, including fine motor tests.  Plaintiff notes that she reported numbness in her right hand during the testing, and her performance placed her in the 10th percentile consistently.  *Opening Brief* [#11] at 13 (citing AR 1194).  Plaintiff's performance also declined with continued testing as she became more fatigued.  *Id*.  As Plaintiff notes, these findings support OTR Couch's opinion that Plaintiff can rarely perform manipulative activities in the work setting, contrary to the ALJ's finding that Plaintiff can "frequently handle and finger with the right dominant upper extremity." AR 22.  Moreover, Plaintiff asserts, and the Commissioner does not dispute, OTR Couch's "limitation to rare manipulative tasks, if credited, would preclude the step 5 jobs named by the [vocational expert] and relied upon by the ALJ to deny benefits, as all three jobs require frequent reaching and handling."  *Opening Brief* [#11] at 6-7.

Finally, as to the ALJ's reliance on daily activities in finding OTR Couch's opinion unpersuasive, the Court notes that such activities can certainly be considered in determining this issue as well as the RFC, as the Commissioner notes.  *Response* [#12] at 13.  However, the ALJ failed to consider the fact that OTR Couch specifically took into account Plaintiff's daily activities in reaching her opinion.  *See* AR 1198-99.  Furthermore, the ALJ selectively applied the evidence as to Plaintiff's activities, failing to discuss or consider the context in which these activities were performed and the significant limitations documented by the record as to these activities.  For example, Plaintiff testified she can attend to a household chore for 15 to 20 minutes before needing a break to rest, *id*. 58, and

---

Court fails to see how such evidence contradicts or is inconsistent with OTR's specific tests that evaluated and found significant deficits in fine motor tasks and other tasks associated with manipulative limitations, and the ALJ did not explain this.

can only drive only on a "good day." *Id.* 269; *see also id*. 1567 (Plaintiff stopped attending physical therapy because she was too fatigued to drive). Plaintiff has repeatedly gotten lost while driving. Again, this was error.[6]

The Commissioner failed to address or acknowledge any of the issues discussed above as to the ALJ's assessment of OTR Couch's opinion. Instead, the Commissioner argues that the ALJ's finding that OTR Couch's opinion was not persuasive was supported by substantial evidence based on things the ALJ did not consider in her decision. Thus, the Commissioner points to alleged discrepancies in OTR Couch's evaluation, such as the fact that she opined that Plaintiff could not sit for more than three hours in a day but her examination showed that Plaintiff could sit for almost four hours, or that OTR Couch opined Plaintiff could not stand more than one hour per day, but her examination showed Plaintiff stood for a total of almost two hours. *Response* [#12] at 11 (citing AR 1193-94). And the Commissioner avers that there is no explanation in the evaluation summary or opinion of how OTR Couch extrapolated that Plaintiff was unable to sit more than three hours a day, or how she could stand for up to 80 minutes at a time, but could not stand more than an hour a day. *Id.* Finally, the Commissioner argues that when it came to Plaintiff's use of her hands, OTR Couch did not provide an explanation for the limitations she identified. *Id.* at 11-12 (citing AR 1235). While the Court disagrees with the above arguments in light of the

---

[6] Plaintiff also points out as to the care of her infant that her husband is home with her and their baby. *Id*. 56. Plaintiff takes her dog for a walk three times per week, but after walking 10 to 15 minutes she stops to rest for 5 to 10 minutes. *Id*. 57. As to the ALJ's reference to Plaintiff's care of other children, Plaintiff used to watch her nieces/nephews (ages 6 to 11) primarily over the summer, which consisted of walking them to the pool and supervising them swimming, and being a "warm body" to settle disagreements and limit screen time. *Id*. 57-58. As to the ALJ's reference to Plaintiff being able to cook, Plaintiff can make "pretty limited, basic meals", *id*. 58, such as frozen meals for lunch and crockpot meals for dinner, *id*. 267, but burns food when she tries to multitask. *Id*. 1115.

extremely detailed evaluation that supported OTR Couch's findings, the Commissioner's arguments are all improper post hoc rationalizations that are not properly before the Court. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (holding that a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance . . . . Judicial review is limited to the reasons stated in the ALJ's decision); *Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985) ("neither the ALJ, nor the Appeals Council cited this [argument made by the Commissioner] as a reason for denying benefits to Knipe, and we therefore should not uphold the agency's denial of benefits on this basis").

      **b.**      **Other Medical Providers**

Plaintiff argues that the ALJ also failed to properly assess the opinions of Dr. Domen in connection with a neuropsychological evaluation and Plaintiff's treating providers NP Cornell, Dr. Gross, and Dr. Ives. *Opening Brief* [#11] at 6. The Court first finds no error with the ALJ's evaluation of the Domen opinion, PhD. As noted previously, the ALJ stated this opinion was persuasive as to its finding of mild to moderate deficits in attention and processing speed and executive functioning which Plaintiff could, at least partially, compensate for with her strengths. AR 29, see also *id*. 1170. Plaintiff's only contention of error with respect to the Domen opinion is that the ALJ did not include the compensatory strategies he recommended (*e.g.,* starting a daily routine, using a calendar, reducing distractions) (*id.* at 1170) or explain why she was not including them in the RFC. *Opening Brief* [#11] at 16. The Court disagrees. Domen's recommendation as to these compensatory strategies is not a medical opinion but constitutes "other medical evidence" since it was a prescribed treatment. 20 C.F.R. § 404.1513(c)(3). "[U]nlike medical

opinions, such evidence does not trigger any articulative duty for an ALJ," and an ALJ may include or omit discussion of such evidence. *Fred A.P. v. Kijakazi*, No. 21-cv-378 (MHL), 2022 WL 3656855, at 7 (E.D. Va. Aug. 9, 2022); *see also Justin R. o/b/o Carla H. v. Kijakazi*, No.21-cv-00249-DBB-JCB, 2022 WL 873616, at *3 (N.D. Okla. Mar. 23, 2022).

With respect to NP Cornell, Dr. Gross, and Dr. Ives, Plaintiff does not provide any specific examples as to how the ALJ erred in her evaluation of their opinions. Plaintiff does note, however, that these treating sources stated that they agreed with the opinions of OTR Couch and Domen. *Opening Brief* [#11] at 16. As to the opinion of OTR Couch, the Court notes NP Cornell's statement that she reviewed and agreed with that opinion, and Dr. Gross stated that he agreed with NP Cornell's opinion which discussed OTR Couch's findings. *See* AR 1422, 1604-05. The ALJ made no reference to this, however, in connection with her weighing of the supportability and consistence factors.

Plaintiff also asserts that "every treating and examining source agreed Plaintiff is more limited than described in the RFC[,]" and asserts that this "is certainly a demonstration of 'consistency' of the record, yet was never discussed by the ALJ." *Opening Brief* [#11] at 16. Instead, as Plaintiff notes, the ALJ considered each opinion in isolation from the others, and Plaintiff argues that the ALJ did not acknowledge that the opinions support each other in their assessment of Plaintiff's work-related limitations. The Court agrees.

Thus, NP Cornell opined to greater limitations consistent with OTR Couch's opinion, including that Plaintiff had limitations with regard to activity due to fatigue and had difficulty manipulating objects. NP Cornell also noted as a basis for her opinions Plaintiff's symptoms of vertigo and imbalance as well as the "repeated neurological examinations"

that indicated weakness in Plaintiff's right leg, an abnormal gait, and other issues identified by OTR Couch. *Id.* 1421 (Ex. 17F). Dr. Gross's opinion (AR 1603-07, Exhibit 26F) also supports the finding of greater restrictions consistent with that found by OTR Couch, and treating provider Dr. Ives opined that she agreed with Dr. Gross's opinion (*id.* 1920), as acknowledged by the ALJ. *Id.* 28. The ALJ's failure to properly consider how these opinions supported or were consistent with each other and with OTR Couch's opinion as to greater restrictions than found by the ALJ was error. *See Archuleta v. Kijakazi*, No. 21-346 JB/GBW, 2022 WL 3754776, at *4 (D.N.M. Aug. 30, 2022) ("when assessing the supportability and consistency of a medical source's opinions, 'all the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings.'") (citation omitted).

### c. Conclusion

Based on the foregoing, the Court finds that the ALJ's findings, at least as to OTR Couch, are not supported by substantial evidence. The Court also finds that the ALJ erred in not properly evaluating all the evidence in connection with the supportability and consistency factors. Accordingly, this case must be remanded for a proper assessment of the medical opinions.

### B.     The Step Five Evaluation and the ALJ's Determination that a Significant Number of Jobs Exist that Plaintiff Can Perform

Plaintiff also argues that because the amount of jobs identified by the vocational expert ("VE") was so low (22,900 jobs at AR 31), the ALJ was required to and failed to consider the factors articulated in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). *Opening Brief* [#11] at 17-18. These factors include, according to Plaintiff, the level of the

claimant's disability, the distance the claimant is capable of traveling, and the types of work identified by the VE. *Id.* (citing *Trimiar*, 966 F.2d at 1330-31). The Court rejects Plaintiff's argument. The Tenth Circuit in *Trimiar* declined to "draw[] a bright line establishing the number of jobs necessary to constitute a 'significant' number.'" 966 F.2d at 1330 (citation omitted). Further, *Trimiar* affirmed an ALJ's finding of significant numbers, even though the number was only 650 to 900 jobs in the state where the claimant resided. *Id.* at 1330-31. The focus in *Trimiar* was on jobs only in the regional economy and because the number of jobs was so low, the court turned to the multi-factor analysis to help it resolve the question of whether 650 to 900 jobs is a significant number. *Raymond v. Astrue*, 621 F.3d 1269, 1274 n. 2 (10th Cir. 2009). Thus, the Tenth Circuit does not necessarily require that the *Trimiar* factors be considered in a case such as this where the amount of jobs is higher.

Nonetheless, because the Court has found that the ALJ did not properly evaluate the medical and other evidence and the pertinent factors in determining the persuasiveness of the medical opinions, the issue of what jobs Plaintiff can perform and whether they exist in significant numbers must necessarily be evaluated on remand. As Plaintiff discussed in the Opening Brief [#11], OTR Couch's limitation to rare manipulative tasks, if credited, would appear to preclude the step five jobs that the ALJ found Plaintiff could do, since Plaintiff avers that all three jobs require frequent reaching and handling. *Id*. at 6-7. Additionally, Plaintiff notes other functions of the jobs the VE identified that Plaintiff may not be able to perform if OTR Couch's opinion or other medical opinions are found to be persuasive on remand. *See id.* at 18-19.[7] These issues must also be reassessed on

---

[7] Plaintiff asserts, for example, that the evidence does not support the ALJ's finding that she can perform the job of "escort vehicle driver" which requires significant multitasking such as "talking

remand in connection with the ALJ's reweighing of the evidence.

### IV. Conclusion

In conclusion,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.[8]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated:  September 16, 2022

BY THE COURT:

*/s/ Kristen L. Mix*

Kristen L. Mix
United States Magistrate Judge

---

on a two-way radio while driving a vehicle" and driving a vehicle (which the record demonstrates Plaintiff has problems with). *Id.* at 18 (citing AR 1194, 1195, 1196). Further, the addresser and painter-stainer jobs both involve highly repetitive manipulative work, and OTR Couch's evaluation demonstrated that Plaintiff's fatigue would interfere in her ability to perform such work on a repetitive basis. *Id.* at 18-19 (citing AR 1194).

[8] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).